**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MARIA ESPARRAGUERA,
      *Plaintiff,*
    v.

U.S. DEPARTMENT OF THE ARMY,
      *Defendant.*

SECRETARY OF THE ARMY MARK ESPER,
(in his official capacity)
      *Defendant.*

UNDER SECRETARY OF THE ARMY RYAN MCCARTHY,
(in his official capacity)
      *Defendant.*

U.S. MERIT SYSTEMS PROTECTION BOARD,
      *Defendant.*

    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )
    )

## COMPLAINT

Plaintiff, Maria Esparraguera, by and though undersigned counsel, states for her cause of action the following:

## NATURE OF ACTION

Defendants deprived Esparraguera of a property interest in her career appointment to the Senior Executive Service without due process in violation of the Due Process Clause of the Fifth Amendment. Esparraguera was adversely affected and/or aggrieved by Defendant MSPB's failure to act, and this failure to act was contrary to constitutional right, short of statutory right, and without observation of procedures required by law.

Circuit Judge Kimberly Moore of the United States Court of Appeals for the Federal Circuit aptly summarized Defendants' conduct: "I think [Esparraguera] was horrifically deprived

of due process and I'm embarrassed that [the government is] standing here saying otherwise. I

think that the process, the secretive process that took her out of the ability to respond, without

knowledge of what was going on, where even the very supervisor who supervised her for many

years and who continued to think she was outstanding, was cut out of the process of deciding

what her performance review should be for that year.  I think that behavior was outrageous. And

I absolutely think it violates due process."

     After Judge Moore's above comment, the Federal Circuit dismissed Esparraguera's

petition for review for lack of jurisdiction, and suggested she seek relief in district court.

Esparraguera now does so here.

## JURISDICTION AND VENUE

   1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, and 5 U.S.C.

§ 702.

   2.  Plaintiff seeks equitable, declaratory and injunctive relief pursuant to 28 U.S.C. § 2201,

28 U.S.C. § 2202 and 5 U.S.C. § 706.

   3.  This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(e)(1).

## PARTIES

   4.  Plaintiff Maria Esparraguera ("Esparraguera") was a member of the Senior Executive

Service and held the position of Director of Civilian Personnel Labor and Employment Law,

Office of the Judge Advocate General, Department of the Army, until the decision to remove her

from the Senior Executive Service, dated September 4, 2018. She currently is employed at the

Department of the Army as a GS-15, Supervisory HR Specialist.

2

5.  Defendant Department of the Army ("Department" or "Army") is an executive agency of

the United States Government, with its headquarters located at 114 Army Pentagon, Washington,

DC 20310.

6.  Defendant Secretary of the Army Mark Esper[1] is an Officer of the United States and is

being sued in his official capacity. Defendant Secretary of the Army performs a substantial

portion of his acts and/or duties in Washington, D.C.

7.  Defendant Under Secretary of the Army Ryan McCarthy[2] is an Officer of the United

States and is being sued in his official capacity. Defendant Under Secretary of the Army

performs a substantial portion of his acts and/or duties in Washington, D.C.

8.  Defendant Merit Systems Protection Board is an executive agency of the United States

Government, with its headquarters located at 1615 M Street NW, Washington, DC 20419.

## FACTUAL ALLEGATIONS

### A.    Esparraguera's Career

9.  After roughly 35 years of exemplary service, Maria Esparraguera was removed from the

SES for committing an alleged "prohibited personnel practice." But Defendants Army and

MSPB denied her any opportunity to respond to the allegation, pre-deprivation or post-

deprivation. And the allegation was never proven by Defendant Army. Indeed, Defendant Army

designed the removal process to be one in which it would never be required to present its case or

---

[1] Esper is no longer Secretary of the Army and is no longer a Department official. Pursuant to
Federal Rule of Civil Procedure 25(d), his "successor is automatically substituted as party."

[2] McCarthy is no longer Under Secretary of the Army and is no longer a Department official.
Pursuant to Federal Rule of Civil Procedure 25(d), his "successor is automatically substituted as
party."

prove its allegation, thereby exposing the constitutionally deficient process afforded by Defendant MSPB.

10. Prior to her improper removal from the SES in September 2018, Maria Esparraguera served as a federal civil servant for almost 35 years.

11. During her three and one half decades of federal civilian service, Esparraguera earned an exemplary employment record, received top-level performance ratings and climbed the ladder from an entry-level attorney position to the Department's top civilian personnel attorney.

12. In 1984, Esparraguera left private practice for an attorney position at Fort Monmouth, New Jersey, a local Army base, seeking an employer with higher moral and ethical standards.

13. In 2010, Esparraguera was appointed to a career Senior Executive Service position as Chief Counsel of the Army Material Command ("AMC") Legal Center at Aberdeen.

14. As Chief Counsel, Esparraguera supervised over 50 attorneys in a broad range of matters, including acquisition and employment disputes.

15. In fall 2015, Esparraguera was appointed Director of Civilian Personnel Labor and Employment Law in the Office of the Judge Advocate General ("OTJAG"). This Tier 2 SES assignment made Esparraguera the Army's highest-ranking civilian personnel attorney, and recognized her expertise in the field of civilian personnel law.

16. Esparraguera's direct supervisors, the Judge Advocate General and Deputy Judge Advocate General, praised her performance, leadership, and mastery of civilian personnel law as the Director of Civilian Personnel Labor and Employment Law.

17. As Director, Esparraguera was responsible for the Army career program for legal professionals, as well as making recommendations on all Army civilian policies, and direction as

4

to how Army lawyers handle their labor and employment law cases. She directly supervised attorneys defending cases at the highest levels of the Army.

18. By letter dated September 4, 2018, McCarthy notified Esparraguera that she would be removed from the SES effective October 14, 2018, for allegedly unsatisfactory performance, and that she had "no statutory or regulatory right to appeal [the] decision to remove" her.

19. The alleged unsatisfactory performance during the FY 2017 rating period was based entirely on an unproven allegation that Esparraguera committed a prohibited personnel practice.

20. Esparraguera was not afforded due process when she was removed from the SES.

21. Specifically, the Department, Secretary Esper and Under Secretary McCarthy did not afford Esparraguera adequate notice and a meaningful opportunity to respond to the allegations against her before she was removed.  Nor was she afforded a meaningful hearing or review after removal.  While she received an "informal hearing," the MSPB failed to conduct that hearing in the manner required by due process.  The Department was never required to, and did not, prove the allegation against her to a neutral decisionmaker.

**B.      SES Performance Management System**

22. The Senior Executive Service, established by the Civil Service Reform Act (CSRA) in 1978, is a select group of civil servants responsible for ensuring "that the executive management of the Government…is responsive to the needs, policies, and goals of the Nation and otherwise is of the highest quality." 5 U.S.C. § 3131.

23. The SES ensures that agencies "recruit and retain the highly competent and qualified executives needed to provide more effective management of agencies." 92 Stat. 1113.

24. The SES offers numerous benefits (including pay, bonus, and leave) more generous than those available to other federal employees, such as General Schedule employees. 5 U.S.C. §§3131(1), 5382, 5384, 6304(f).

25. SES employees are paid performance awards in accordance with the provisions of 5 U.S.C. §5384.

26. SES employees may accumulate triple the amount of annual leave for use in succeeding years as typical General Schedule employees. 5 U.S.C. §6304(f).

27. Career Senior Executives may be removed from the SES only for cause. Such cause includes "unsatisfactory" or "less than fully successful" performance, 5 U.S.C. §§ 3592(a), 4314(a)(3), and "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a).

28. The CSRA requires each federal agency to establish a performance appraisal system for career Senior Executives. 5 U.S.C. §4312. An agency's career Senior Executive appraisal system must "permit the accurate evaluation" of performance and "provide a basis for making eligibility determinations for retention in the Senior Executive Service." 5 U.S.C. § 4312(a).

29. The Department's performance system for career Senior Executives has five levels, from Level 1 ("Unsatisfactory") to Level 5 ("Outstanding" or "Exceptional"). 5 C.F.R. § 430.305(a)(6).

30. The career Senior Executive's "supervising official" or "rating official" conducts an "initial appraisal" of the executive's performance using the 5-level rating system. 5 U.S.C. § 4314(c)(2).

6

31. The initial appraisal is then provided to the agency's "performance review board" ("PRB"), which may "conduct such further review as the board finds necessary" before recommending a final rating. 5 U.S.C. § 4314(c)(1)-(2).

32. Next the PRB's recommendation is sent to the "appointing authority," who assigns a final rating after "considering the recommendations by the performance review board." 5 U.S.C. § 4314(c)(3).

33. The Department's "appointing authority" is the Secretary of the Army. Secretary Mark Esper delegated this authority to the Under Secretary of the Army, Ryan McCarthy, for Esparraguera's FY 2017 performance rating.

34. The CSRA does not authorize the "appointing authority" to delegate his authority, and Secretary Esper's delegation to Under Secretary McCarthy, as described above, was unlawful.

35. Before any senior executive rating becomes final, the CSRA mandates that "each senior executive…[be] provided a copy of the appraisal and rating…and be given an opportunity to respond in writing and have the rating reviewed by an employee…in a higher level in the agency." 5 U.S.C. §4312(b)(3).

36. For Esparraguera's FY 2017 performance rating, the Department, Secretary Esper and Under Secretary McCarthy did not allow Esparraguera an opportunity to respond before the rating became final, violating not merely Esparraguera's due process rights, but the CSRA and Army's internal performance management procedures as well.

## C.    The Office of Special Counsel and Prohibited Personnel Practices

37. The Office of Special Counsel ("OSC") was created by the CSRA, and is authorized to investigate allegations of prohibited personnel practices.

7

38. The CSRA defines various "prohibited personnel practices" ("PPPs"). One of the PPPs is for a federal employee to "grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment." 5 U.S.C. § 2302(b)(6).

39.  OSC is not authorized to make a final determination that a PPP occurred. OSC may determine only "whether there are reasonable grounds to believe that a prohibited personnel practice has occurred." 5 U.S.C. §1214(a)(1)(A).

40. If OSC makes such a determination, OSC must report it to "the agency involved" and may recommend "corrective action to be taken" by the agency. 5 U.S.C. § 1214(b)(2)(B).

41. Upon receipt of an OSC recommendation, an agency, if it believes a PPP was committed, can take disciplinary action against the responsible employee. 5 U.S.C. §§ 7513, 7543. If the agency takes an adverse action, such as demotion or removal, against the employee for committing a PPP, the employee is entitled to due process, including an evidentiary hearing before the MSPB where the agency bears the burden of proving the employee committed a PPP by a preponderance of the evidence.

42. Alternatively, OSC may file a complaint with the MSPB. 5 U.S.C. § 1215(a)(1). Filing such a complaint triggers due process protections for the accused employee, including an evidentiary hearing before the Board where OSC must prove by a preponderance of the evidence that the accused employee committed a prohibited personnel practice. 5 C.F.R. § 1201.56(b).

**D.     Unproven PPP Allegation Against Esparraguera**

43. In 2014, Esparraguera was tasked to recommend a candidate to fill a General Schedule 15 ("GS-15") division chief position at the AMC Legal Center at Aberdeen Proving Ground.

8

44. The division chief position called for time in grade of at least one year of service at the GS-14 grade.

45. AMC Headquarters compiled and provided Esparraguera a list of eleven candidates to consider for the division chief position. One candidate referred to Esparraguera by AMC Headquarters was Rick Bechtel.

46. At the time AMC Headquarters referred Bechtel to Esparraguera for consideration, he had less than one year in [GS-14] grade when he applied for the division chief position.

47. Army Regulation 690-300 permits waivers of the time in grade requirement in cases of "hardship to the activity or inequity to the employee."

48. Because Bechtel failed to fulfill the time in grade requirement, Esparraguera initially determined she would not interview Bechtel.

49. When informed he would not be interviewed, Bechtel responded that a reason he did not possess the time in grade requirement was because he voluntarily delayed his last promotion, at the Department's request, to complete his work on a classified project.

50. Based on this new information, Esparraguera concluded it would be "inequitable" to exclude Bechtel from consideration. She decided to interview Bechtel along with the other ten candidates, believing a waiver could be obtained if necessary due to the inequity, pursuant to Army Regulation 690-300.

51. Each of the eleven candidates was interviewed by a three-person panel consisting of Esparraguera and two other Department Senior Executives.

52. After the interviews were complete, two of the panelists (Esparraguera and another) ranked Bechtel as the top candidate. The third panelist ranked Bechtel second amongst the eleven candidates.

53. Despite the majority ranking Bechtel first, the panel concurred that the top three candidates were tightly grouped and that the decision was too close to call.

54. To better evaluate the candidates and to help make a final decision, Esparraguera proposed assigning the top three candidates to perform a 30-day trial period as Acting Division Chief. All three candidates were already employed by the Department. Esparraguera memorialized her recommendation for the trial rotation to at the Command Counsel at AMC headquarters, Brian Toland.

55. Command Counsel Toland was responsible for approving and qualifying the panel's selection.

56. In her memorandum, Esparraguera explained that the rotation would allow the Department to "properly evaluate" the candidates' "potential for leadership."

57. Also in the memorandum, Esparraguera noted that even though Bechtel had less than the required one year in grade, AMC forwarded his name for consideration. She then explained that Bechtel's consideration was warranted because he previously deferred his prior promotion at the Department's request.

58. AMC Command Counsel Brian Toland authorized the proposed rotation plan.

59. Command Counsel Toland instructed Esparraguera to implement the rotation and to make a final selection at the conclusion of the rotation.

60. After the rotations were completed, all three panelists identified Bechtel as the best candidate. Esparraguera then summarized the panel's evaluation and formally recommended Bechtel's selection to Command Counsel Toland on January 16, 2015.

61. On January 28, 2015, Command Counsel Toland approved the selection of Bechtel for the division chief position.

62. Bechtel excelled as the division chief, and served in the position for several years prior to taking a position at a federally funded research and development center.

63. Following Bechtel's selection, a complaint was filed with OSC, alleging Esparraguera committed a PPP.

64. OSC analyzed the PPP allegation, and in October 2016, sent the Department a three-and-a-half-page document labeled a "Summary of Findings."

65. The 2016 Summary of Findings stated that "OSC believes that [Esparraguera's] actions violated 5 U.S.C. § 2302(b)(6). We recommend that the agency take appropriate disciplinary action."

66. The 2016 Summary of Facts asserted facts contrary to evidence.

67. The 2016 Summary of Findings made conclusions based on a rescinded Department standard operating procedure.

68. The 2016 Summary of Findings omitted material facts, including facts that exculpated Esparraguera.

69. OSC did not provide a copy of the 2016 "Summary of Findings" to Esparraguera, and OSC never offered Esparraguera an opportunity to rebut it.

70. Later in 2016, Esparraguera obtained a copy of OSC's Summary of Findings from her supervisor, the then-Judge Advocate General (JAG), LTG Flora Darpino.

71. When giving Esparraguera a copy of the Summary of Findings, LTG Darpino told Esparraguera that she (Darpino—the JAG) disagreed with OSC's asserted findings and that no action would be taken.

72. Esparraguera's supervisors, the Judge Advocate General and Deputy Judge Advocate General, did not agree with OSC's allegation that Esparraguera committed a PPP.

11

73. Esparraguera's supervisors, the Judge Advocate General and Deputy Judge Advocate General, determined no action against Esparraguera was warranted, and retained Esparraguera in her position.

74. On February 9, 2018, sixteen months after its initial Summary of Findings, OSC sent the Department its "Report of Prohibited Personnel Practice" ("Report").

75. The Report's cover letter, addressed to the Secretary of the Army and signed by the Special Counsel, complained that OSC's earlier attempts to persuade "Army attorneys to resolve this matter . . . ha[d] not been successful." The letter urged the Department to take "appropriate corrective and disciplinary action" against Esparraguera.

76. The 2018 OSC Report stated that "OSC has reasonable grounds to believe that Esparraguera violated section 2302(b)(6) by conducting an improper post-recruitment candidate rotation as part of the selection process for a GS-15 supervisory position at the Army."

77. The 2018 OSC Report parroted the views of Department staff who insisted Esparraguera could not have obtained a waiver of the time-in-grade requirement to hire Bechtel "because she [Esparraguera] was not under a hardship." The Report failed to mention that the governing regulation, Army Regulation (AR) 690-300, expressly authorized a waiver to avoid "inequity to the employee" under consideration.

78. "Inequity to the employee" was Esparraguera's basis for considering Bechtel, who had deferred his promotion to GS-14, at his supervisor's request, to complete work on a classified project.

79. The 2018 OSC Report said that the Department's time-in-grade regulation looks to the "time of application" and not "the time of selection." But the regulation itself says the opposite:

"[C]andidates *selected* for advancement should have completed at least 1 year of service that is one grade lower than the position to be filled."

80. The 2018 OSC Report also invoked a Department standard operating procedure, Procedures for the Recruitment of Civilian Attorneys within the Department of the Army, Civilian Human resources Agency Standard Operating Procedure 213-14-SOP-01 (January 28, 2014) to justify its findings. But the Report failed to mention that the cited standard operating procedure was rescinded before the events here.

81. After learning of the 2018 OSC Report, Esparraguera asked the Department for a copy. OSC refused to authorize the Department to provide it to her, even while it openly pressured the Department to take action against Esparraguera based on it.

82. Had Esparraguera been provided with a copy of the 2018 OSC Report and underlying materials before the decision to remove her, she could have responded to the information therein, including but not limited to the information in paragraphs 75-80 above.

83. Had Esparraguera been provided with a copy of the 2018 OSC Report and underlying materials before the decision to remove her, she could have responded to factual and legal assertions in the Report.

84. Had Esparraguera been provided with a copy of the 2018 OSC Report and the underlying materials before the decision to remove her, she could have utilized potentially exculpatory information in the documents in her own defense.

85. In March 2018, the Department initiated its own internal investigation into the 2018 OSC Report's allegation to determine what, if any, corrective action to take against Esparraguera.

86. On March 16, 2018, Esparraguera was detailed to a different SES position, the Executive Assistant to the Executive Director at Arlington National Cemetery.

87. On March 23, 2018, the Secretary's authority to resolve allegations against civilian executives, including Esparraguera, was delegated to Ms. Kathleen Miller, Assistant Deputy Chief of Staff.

88. On behalf of the Department, Miller investigated the alleged PPP in 2018.

89. When conducting the investigation in May 2018, Miller interviewed Esparraguera and learned from Esparraguera her contemporaneous explanation for the rotation plan.

90. The Department's investigation did not find that Esparraguera committed a prohibited personnel practice or that she intended to favor Bechtel (a required element for a PPP).

91. The Department withheld from Esparraguera the results of the investigation until after the decision to remove Esparraguera from the SES.

92. Via memorandum dated September 5, 2018, the Army informed Esparraguera of the results of its investigation.  It did not find she committed a PPP.  Rather, it issued her a written reprimand for "failure to exercise due diligence and exhibiting poor supervisory leadership in [her] handling of a selection process during [her] previous appointment as Chief Counsel, U.S. Army Communications-Electronics Command (CECOM)."

93. In light of Esparraguera's decades of service with no prior disciplinary record, Army found that only a written reprimand, to be removed from her personnel file after one year, was warranted.

94. Esparraguera grieved the reprimand on October 29, 2018, and asked in her grievance for the Department to clarify whether it believed she committed a PPP.

95. On December 3, 2018, Acting Assistant Secretary Jordan Gillis issued a grievance decision confirming that the reprimand "made no assertion that [Esparraguera] committed a prohibited personnel practice."

14

E.    **Esparraguera's FY 2017 Performance Rating and Removal from SES**

96. The performance appraisal period for Fiscal Year 2017 ended on September 30, 2017.

97. For the FY2017 rating period (October 1, 2016 to September 30, 2017), Esparraguera's

rating official, Deputy Judge Advocate General, Major General Stuart Risch, awarded

Esparraguera an initial summary rating of Level 5 ("Outstanding") – the highest possible rating.

98. In the FY2017 initial rating, MG Risch lauded Esparraguera as "one of the best senior

executive employees [he had] served with during [his] almost 30 year career." He also described

Esparraguera as "[a]n exceptional leader who continues to bring energy, mentorship, training and

inspiration to all her subordinates." He also remarked that both he and the Judge Advocate

General "trust her implicitly," and that her performance was "[s]imply exceptional."

99. On February 2, 2018, Esparraguera received a letter stating that final action on her FY

2017 performance rating was held in abeyance due to an ongoing investigation. The letter did not

identify the basis for the investigation or who was conducting it. The letter assured Esparraguera

that if there were substantiated findings, she would be advised of any changes to her initial

summary rating and provided additional information.

100.    A copy of this letter was also provided to Esparraguera's Rating Official (the

Deputy Judge Advocate General) and the Judge Advocate General.

101.    The Department of the Army Civilian Senior Executive Performance

Management and Discipline Process ("Department Policy") mandates specific performance-

appraisal procedures for civilian Senior Executives subject to investigation for misconduct.

102.    The Department Policy states that when a Senior Executive is subject to an

investigation for misconduct during the rating period, the rating official may provide an initial

appraisal, and the process may then be held in abeyance pending the investigation's completion.

103.     If the investigation substantiates Senior Executive misconduct, the Rating Official "may, but is not required to, revise" the initial appraisal.

104.     Per the Department Policy, the initial appraisal is then sent to the PRB to recommend a final rating.

105.     If the PRB recommends a rating below Level 3, the senior executive's "Command/Organization will be notified and allowed an opportunity to submit written comments to the PRB on the matter prior to the PRB finalizing its recommendation" to the appointing authority.

106.     Army failed to follow these required procedures for Esparraguera's FY 2017 performance rating.

107.     As noted above, in March 2018, the Department initiated an investigation that culminated in a written Reprimand that did *not* find Esparraguera had committed a PPP. The Department was not satisfied with the results of its internal investigation. At the end of May 2018, after interviews concluded in the internal investigation, Department staff took steps to increase Esparraguera's legal peril outside of established investigative, disciplinary, and/or appraisal procedures, before the favorable results of the investigation were shared with Esparraguera.

108.     At some point before the end of May 2018, Department staff prepared an "Executive Summary" of OSC's Report.

109.     The Executive Summary was unsigned, undated, and only two pages in length.

110.     The Executive Summary held itself out as an official OSC publication, prominently displaying "U.S. OFFICE OF SPECIAL COUNSEL" across the top, as if it was created by OSC, when it was not.

16

111.    The Executive Summary was created internally by Department staff.

112.    The Executive Summary omitted material and exculpatory information about Bechtel's hiring, including but not limited to information related to Esparraguera's contemporaneous explanation for the rotation plan, her belief that pursuant to AR 690-300 a waiver of the time-in-grade requirement could be obtained if necessary based on inequity to Bechtel, and that CECOM human resources specialists based their belief that a waiver could not be obtained on a standard operating procedure that had been rescinded prior to these events.

113.    The Executive Summary erroneously declared that "OSC found that the rotation. . . was not justified and that Esparraguera likely knew that it was improper."

114.    The Executive Summary omitted that, by statute, OSC could at most find "reasonable grounds to believe" that Esparraguera committed a prohibited personnel practice— not that a PPP actually occurred.

115.    The Executive Summary omitted that the Department conducted its own internal investigation of the alleged PPP, and that the Department did not conclude that Esparraguera committed a PPP.

116.    The Executive Summary omitted Esparraguera's prior statements and explanations for her actions in response to the alleged PPP.

117.    The Executive Summary omitted that there was a selection panel, and that the selection panel unanimously supported the rotation plan and recommended Bechtel as the top choice.

118.    The Executive Summary wrongly implied that Esparraguera alone engineered the rotation plan to favor Bechtel.

119.     The Executive Summary was created "specifically" for a "special" Performance Review Board ("PRB") convened to recommend an alteration to Esparraguera's FY 2017 rating.

120.     This "special" PRB only reviewed Esparraguera's FY 2017 rating and did not review any other performance appraisals for any other Senior Executives.

121.     Before the Executive Summary was sent to the special PRB, the Civilian Senior Leadership Management Office ("CSLMO") provided a copy of the Executive Summary to Major General Risch, Esparraguera's rating official, and pursuant to Department Policy, Sec. 3.b(1)(b), afforded Major Risch the opportunity to revise his initial summary rating of Esparraguera's FY 2017 in light of the investigatory "findings" described in the Executive Summary.

122.     Major General Risch declined to change his initial rating of Esparraguera and retained the Level 5 ("Outstanding") rating.

123.     Between June 2018, and early August 2018, the Department, without notifying Esparraguera, convened a special PRB to recommend a final rating for Esparraguera's FY 2017 performance.

124.     The Department withheld from the special PRB Esparraguera's prior statements and explanations responding to the alleged PPP.

125.     Upon information and belief, the only document considered by the special PRB was the Executive Summary.

126.     The Executive Summary offered a highly misleading account of the allegations and OSC's conclusions calculated to push the special PRB to unfavorably rate Esparraguera's performance for FY 2017.

18

127.     The Executive Summary, the document upon which the special PRB acted, was not provided to Esparraguera before the special PRB finalized its rating recommendation.

128.     The special PRB did not solicit a response from Esparraguera.

129.     The special PRB, based on the misleading Executive Summary, recommended lowering Esparraguera's FY 2017 rating from a Level 5 to a Level 1.

130.     The Department did not inform Esparraguera it had convened a special PRB until after the special PRB convened and recommended changing her rating from a Level 5 to a Level 1.

131.     The Department did not inform Esparraguera of the existence of the Executive Summary or that it had provided it to the special PRB until after the special PRB convened and decided to recommend changing her rating from a Level 5 to a Level 1.

132.     When the PRB recommends lowering a rating to a Level 3 or below as a result of investigatory findings, Department Policy requires the PRB to inform Command/Organization of the recommendation to change the initial summary rating, and allow the Command/Organization an opportunity to respond to the PRB's recommendation before the PRB makes its recommendation to the appointing authority.

133.     Esparraguera's Command/Organization was not afforded the opportunity to respond to the PRB's recommendation prior to the PRB finalizing its recommendation for Esparraguera's FY 2017 rating. Neither the Office of the Judge Advocate General, nor the Judge Advocate General (LTG Charles Pede), nor the Deputy Judge Advocate General (MG Risch) was informed or afforded an opportunity to respond to the PRB's recommended Level 1 rating.

19

134.     Before a rating is finalized, 5 U.S.C. § 4312(b)(3) and Department Policy required the Department to provide Esparraguera the opportunity to respond to the rating and to seek higher-level review of the rating.

135.     The Department did not provide Esparraguera with an opportunity to respond to or seek higher-level review of the FY 2017 rating before it was finalized.

136.     The Department forwarded the special PRB's recommendation directly to Under Secretary McCarthy for finalization.

137.     After learning through Department counsel that the special PRB had already recommended a Level 1 rating, Esparraguera wrote to Under Secretary McCarthy and asked him to void the special PRB's unlawful Level 1 rating and provide Esparraguera with the processes required by the Due Process Clause, the CSRA and Department Policy.

138.     Days later, in a letter dated September 4, 2018, Under Secretary McCarthy notified Esparraguera that he directed Esparraguera's removal from the SES for "unacceptable performance."

139.     Under Secretary McCarthy stated that he decided to remove Esparraguera from the SES because of "the Performance Review Board's recommendation based on findings from the Office of Special Counsel's (OSC) Report of Prohibited Personnel Practice, OSC File No. MA-15-2692, dated 9 February 2018."

140.     The Removal Notice stated that "[t]he OSC investigation concluded that [Esparraguera] committed a prohibited personnel practice by conducting an improper post-recruitment candidate rotation as part of the selection process for a GS-15 supervisory attorney." In fact, OSC did not have legal authority to conclude that Esparraguera committed a prohibited personnel practice, and only had a "reasonable belief" that she did.

20

141.    Explaining his decision to remove Esparraguera from the SES, Under Secretary McCarthy stated that "OSC's finding that [she] committed a prohibited personnel practice," undermined Esparraguera's ability to serve in a senior position.

142.    Under Secretary McCarthy's decision did not address Esparraguera's defenses against OSC's allegations because Esparraguera was not granted access to the 2018 OSC Report upon which his decision relied, and was not afforded a meaningful opportunity to respond to the OSC Report's allegations before Under Secretary McCarthy made his decision.

143.    Notwithstanding Under Secretary McCarthy's and the Department's assertion that Esparraguera committed a PPP in connection with Bechtel's selection for the division chief position in 2015, neither McCarthy nor the Department took corrective action to undo the effect of the alleged PPP. Bechtel remained in the division chief position until he voluntarily left the Department years later.

144.    Under Secretary McCarthy removed Esparraguera from the SES and demoted her to a GS-15 human resources position, effective October 14, 2018.

145.    Esparraguera was never afforded a meaningful opportunity to respond to the allegations of poor performance and improper conduct before Under Secretary McCarthy decided to remove her from the SES.

146.    Under Secretary McCarthy had discretion whether or not to adopt the PRB's recommended Level 1 rating, as well as discretion whether or not to remove Esparraguera from the SES upon adopting a Level 1 rating. But Esparraguera was never afforded an opportunity to invoke Under Secretary McCarthy's discretion before his decision to remove her.

147.    Because of the removal, Esparraguera is not eligible for non-competitive reinstatement to the SES.

148.     Esparraguera's removal from the SES was memorialized in her official personnel file.

149.     Esparraguera's removal from the SES affected her pay.

150.     Because of her removal, Esparraguera has no opportunity for salary increases.

151.     Esparraguera's removal from the SES caused Esparraguera to lose paid leave she would have accrued automatically in the SES.

152.     Under Secretary McCarthy notified Esparraguera that she had "no statutory or regulatory right to appeal" or grieve her removal, and that she could seek "an informal hearing before the U.S. Merit Systems Protection Board."

153.     Under Secretary McCarthy's removal notice included two attachments: (1) Esparraguera's final FY 2017 performance rating; and (2) the position description for the Supervisory Human Resources Specialist.

154.     Neither the removal notice nor the Level 1 Rating included evidence of Esparraguera's allegedly unacceptable performance during the FY 2017 performance period.

155.     J. Randall Robinson signed Esparraguera's final FY 2017 rating for the special PRB. His signature is undated.

156.     Under Secretary McCarthy signed Esparraguera's final FY 2017 rating, and dated it September 4, 2018.

157.     The Department, Under Secretary McCarthy and Secretary Esper did not provide to Esparraguera before her removal from the SES a copy of the 2018 OSC Report upon which her removal was expressly based.

158.     The Department, Under Secretary McCarthy and Secretary Esper never afforded Esparraguera advanced notice and the opportunity to respond to the alleged unsatisfactory

performance and invoke the discretion of the decisionmaker prior to Army removing her from the SES for unsatisfactory performance.

159.     Prior to her removal from the SES, Esparraguera requested, but was not provided, a copy of the 2018 OSC Report.

160.     After she was notified by Under Secretary McCarthy of his September 4, 2018 decision that she would be removed from the SES, Esparraguera again requested a copy of the 2018 OSC Report, this time in reference to her grievance of the reprimand. On September 21, 2018, the Department provided her with a copy of the 2018 OSC Report, explaining that it would do so "now that an action has been taken based on the report."

161.     Esparraguera also requested documentation from the Department's internal investigation. In response to her request, the Department informed her that no report was ever created, and that the investigator had not collected "any documents or other tangible material."

162.     Department counsel on September 17, 2018, told Esparraguera that she could try to seek reconsideration of her removal from the SES from the Under Secretary pursuant to AR 690-900.

163.     Four days later, on September 21, 2018, Department Counsel told Esparraguera that he was mistaken and that no "policy or regulation" authorized her to seek reconsideration of her removal from the SES.

164.     Esparraguera, per Department counsel's recommendation, asked Under Secretary McCarthy to reconsider his removal decision. On January 17, 2019, Under Secretary McCarthy denied Esparraguera's request without explanation.

165.     Esparraguera on September 24, 2018, asked Secretary Esper for a higher-level review of the Under Secretary McCarthy's final FY 2017 rating. On behalf of the Secretary, the

Department's Principal Deputy General Counsel on October 10,2018, denied Esparraguera's request for a higher-level review because higher-level review was "not available."

166.     Esparraguera also requested to meet with Under Secretary McCarthy to present her request for reconsideration in person. Her request was ignored.

**F.     Post-Removal MSPB Hearing and Order**

167.     Senior Executives removed for "less than fully successful executive performance" are entitled "to an informal hearing before an official designated by the Merit Systems Protection Board at which the [senior executive] may appear and present arguments." 5 U.S.C. § 3592(a).

168.     On September 26, 2018, Esparraguera filed a request with the MSPB for an informal hearing under 5 U.S.C. § 3592(a).

169.     The MSPB designated an administrative law judge ("ALJ") to preside over the hearing.

170.     In a November 6, 2018 Scheduling Order, the ALJ informed the parties that MSPB regulations provide a limited role for the ALJ, and that the ALJ would not issue a dispositive decision.

171.     On several occasions, Esparraguera requested that the MSPB hearing be held at the Pentagon, to accommodate the production of witnesses.

172.     The Department objected to holding the hearing at the Pentagon, and demanded the hearing occur in Washington, D.C.

173.     On December 18, 2018, Esparraguera filed her Witness and Exhibit List with the MSPB. The majority of the witnesses listed were employed by the Department.

174.     On March 19, 2019, during a pre-hearing telephone conference, Esparraguera requested the Department produce and/or the ALJ require the attendance of certain witnesses to testify at the hearing.

175.     The Department refused to produce any government-employed witnesses to testify at hearing.

176.     The MSPB in a March 20, 2019 Order stated it was "constrained by the limits of the law and regulations" and could not compel Department employees to appear to testify at the hearing.

177.     The MSPB in its March 20, 2019 Order asserted that the MSPB would not issue a dispositive decision at the conclusion of the hearing.

178.     Esparraguera requested witnesses to voluntarily appear to testify at hearing.

179.     No witnesses appeared or testified at the hearing.

180.     The MPSB ordered the hearing to take place in Washington, D.C. at MSPB Headquarters.

181.     On June 5, 2019, Esparraguera's hearing was held at MSPB Headquarters in Washington, DC.

182.     At the hearing in Washington, DC, the MSPB-designated ALJ presided, and the attendees were Esparraguera, Esparraguera's counsel, and the Department's Counsel, Mr. Jason Chester.

183.     At the outset of the hearing, the MSPB-designated ALJ stated that he could not issue a decision or offer any correction to the Department's decision to remove her. Nevertheless, Esparraguera raised the Department's failure to provide pre-deprivation due

process, and the Department and MSPB's failure to provide meaningful post-deprivation due process.

184.     Esparraguera presented at the hearing argument and evidence that the Department violated its own policies and procedure, and denied her due process before removing her from the SES.

185.     Esparraguera argued that she received no pre-deprivation due process, no meaningful post-deprivation process, and that the limited process afforded to her could not address error by the Department of any sort.

186.     Esparraguera also argued at the hearing that the Department and MSPB denied her due process after her removal from the SES.

187.     Esparraguera argued at the hearing that the Department could not prove Esparraguera committed a PPP (the only reason she received a Level 1 rating and was removed from the SES), and that the Department's actions were arbitrary, capricious and/or an abuse of discretion.

188.     At the MSPB hearing in Washington, DC, Esparraguera demanded an evidentiary hearing, and a decision from the MSPB.

189.     At the MSPB hearing in Washington, DC, Esparraguera argued that 5 U.S.C. § 3592(a)(2), was unconstitutionally applied to her when she was removed from the SES.

190.     At the MSPB hearing in Washington, DC, Esparraguera argued that the Department misused its authority in order to avoid ever having to prove its case at an evidentiary hearing.

191.     The MSPB-appointed ALJ asked the Department whether it would present any evidence in support of its decision to remove Esparraguera. Through counsel, the Department declined to present evidence, witnesses, or arguments at the hearing.

192.     At the conclusion of Esparraguera's argument at the hearing, the MSPB-appointed ALJ stated that he "appreciate[d] the frustration with the limits of the regulations in the law," and claimed that he was "constrained by the regulations."

193.     On June 20, 2019, the ALJ issued an "Order Referring Record" ("Order") on behalf of the MSPB. The Order again stated that the MSPB was constrained by the MSPB's regulations, and could not issue a dispositive decision or "grant any relief." The MSPB Order also stated that those limitations "[did] not preclude some other basis for seeking relief."

194.     MSPB referred the record and hearing transcript to the Office of Special Counsel, the Office of Personnel Management, and the Department "for whatever action they may deem appropriate."

195.     The Order concluded the MSPB's proceedings.

196.     MSPB never issued a dispositive order adjudicating the factual and legal issues Esparraguera raised at the hearing in Washington, DC on June 5, 2019.

197.     On June 21, 2019, the Acting Clerk of the Board sent copies of the Order, and the record of the MSPB proceedings, to Army Secretary Mark Esper, U.S. Special Counsel Henry Kerner, and the Office of Personnel Management Acting Director Margaret Weichert.

198.     Secretary Esper (or his successor) and the Department received the Order and record, and did not take any action in response.

199.     Esparraguera was never afforded a post-removal evidentiary hearing to contest the basis for her removal from the SES.

27

200.     Esparraguera never received a dispositive order adjudicating the factual and legal issues she raised at the MSPB hearing to contest her removal from the SES.

**G.     The Federal Circuit Rules It Lacks Jurisdiction to Review Esparraguera's Constitutional Claims.**

201.     Following the conclusion of MSPB proceedings, Esparraguera sought judicial review from the United States Court of Appeals for the Federal Circuit. *See Esparraguera v. Dep't of the Army*, 981 F.3d 1328 (Fed. Cir. 2020).

202.     At the Federal Circuit, Esparraguera argued, amongst other things, that she was deprived of property and liberty without due process, and denied an adequate post-removal process at the MSPB.

203.     Oral argument was held on October 9, 2020. During the Department's argument, Circuit Judge Moore stated to the government: "Counsel. I am just going to stop you. You might be right on jurisdiction, and you may even be right as to the property right, but I think this lady was horrifically deprived of due process and I'm embarrassed that you're standing here saying otherwise. I think that the process, the secretive process that took her out of the ability to respond, without knowledge of what was going on, where even the very supervisor who supervised her for many years and who continued to think she was outstanding, was cut out of the process of deciding what her performance review should be for that year. I think that behavior was outrageous. And I absolutely think it violates due process."

204.     On December 4, 2020, the Federal Circuit dismissed Esparraguera's petition for review for lack of jurisdiction, finding that the MSPB's Order Referring Record was not a "final order or decision" of the MSPB required for the Federal Circuit's appellate jurisdiction.

28

205.     The Federal Circuit panel decision also held the statute did not allow the MSPB to review Esparraguera's adverse employment action.

206.     Chief Judge Sharon Prost authored the opinion, and citing three U.S. District Court for the District of Columbia cases asserted: "we also doubt that our lack of jurisdiction leaves Esparraguera's constitutional claims unreviewable. We observe, as does the government, that district courts have indeed been willing…to hear constitutional challenges where Board review of an adverse employment action is unavailable."

## CLAIMS FOR RELIEF

### Count I - Property Taking in Violation of the Fifth Amendment Due Process Clause (as to all Defendants)

207.     Plaintiff re-alleges and incorporates by reference the allegations contained in all the preceding paragraphs.

208.     The Due Process Clause of the Fifth Amendment states that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

209.     Individuals may only be removed from the SES for cause, including "less than fully successful executive performance," 5 U.S.C. § 3592(a)(2), or "misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." 5 U.S.C. § 7543(a).

210.     Through the CSRA, and its for-cause removal standard, Congress granted career Senior Executive Service employees, including Esparraguera, a property interest in continued SES employment, as well as in the benefits that accompany a career SES appointment.

211.     When Esparraguera was removed from the SES and its attendant benefits, she was deprived of those property interests.

29

212.     Esparraguera was entitled to constitutionally adequate due process before and after her removal from the SES.

213.     An essential principle of due process is that a deprivation of life, liberty, or property must be preceded by notice, and an opportunity to respond.

214.     Esparraguera was entitled to notice of the allegations against her and a meaningful opportunity to respond before she was removed from the SES.

215.     The Department, Secretary and Under Secretary never provided Esparraguera notice or an opportunity to respond before she was removed from the SES.

216.     The Department, Secretary and Under Secretary deliberately withheld from Esparraguera the reasons for her removal from the SES until after the Under Secretary made his decision to remove her and issued that decision to her, denying her an opportunity to rebut the accusations prior to the decision.

217.     The Department, Secretary and Under Secretary denied Esparraguera the statutory protections owed to her by 5 U.S.C. §4312(b)(1)-(3).

218.     The Department, Secretary and Under Secretary denied Esparraguera procedural protections required by Army internal policies and procedures.

219.     Defendants denied Esparraguera adequate post-removal due process.

220.     The Fifth Amendment entitled Esparraguera to an evidentiary hearing before an impartial adjudicator empowered to rectify error and order her reinstatement if appropriate.

221.     The Fifth Amendment entitled Esparraguera to an evidentiary hearing at which the Department was required to prove cause for Esparraguera's removal

222.     The manner in which Defendants applied 5 U.S.C. § 3592(a)(2) to Esparraguera violated the Fifth Amendment.

223.     Defendants did not afford Esparraguera a post-removal evidentiary hearing at which the Department was required to prove cause for Esparraguera's removal.

224.     Defendants denied Esparraguera the opportunity to confront the evidence and witnesses allegedly supporting the allegations against her.

225.     To this day, the Department, Secretary and Under Secretary have not specified and provided Esparraguera with the underlying information and evidence that allegedly justified her removal from the SES.

226.     The MSPB failed and refused to issue a dispositive decision on the legality of the removal, and instead only delivered the record of proceedings to the Department, the Office of Special Counsel, and the Office of Personnel Management.

227.     The Defendants took no action to rectify Esparraguera's unlawful and unconstitutional removal after the MSPB hearing.

228.     Defendants violated Esparraguera's Fifth Amendment right to due process.

## Count II – Failure to Act in Violation of the Administrative Procedure Act
## (as to Defendant MSPB only)

229.     Plaintiff re-alleges and incorporates by reference the allegations contained in the proceeding paragraphs.

230.     The Administrative Procedure Act (APA) provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

231.     The APA also provides that "final agency action for which there is no other adequate remedy in court" is "subject to judicial review." 5 U.S.C. § 704.

232.     The APA provides that a reviewing court shall "shall decide all relevant questions of law, interpret constitutional and statutory provisions" and "compel agency action unlawfully

withheld or unreasonably delayed." 5 U.S.C. § 706. The reviewing court shall also "hold

unlawful and set aside agency actions … found to be (A) arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power,

privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short

of statutory right; [or] (D)without observance of procedure required by law. *Id.*

233.    A "failure to act" is an "agency action" that is subject to judicial review. 5 U.S.C.

§ 551(13).

234.    MSPB is an "agency" whose final actions are reviewable under the APA.

235.    The MSPB failed to act by failing to issue an order with a final disposition of the

factual and legal issues raised at Esparraguera's hearing before the MSPB on June 5, 2019.

236.    The MSPB was required by law to make a final disposition after Esparraguera's

hearing before the MSPB.

237.    MSPB's failure to act was not in accordance with law because it violated the Fifth

Amendment Due Process Clause and the CSRA.

238.    The MSPB's failure to act was contrary to constitutional right afforded by the

Fifth Amendment Due Process Clause.

239.    The MSPB's failure to act was short of statutory right provided by the CSRA.

240.    The MSPB's failure to act was without observation of procedure required by law,

including the Fifth Amendment Due Process Clause and CSRA.

241.    Esparraguera suffered a legal wrong and/or was adversely affected because of

MSPB's failure to act.

242.    Because of the MSPB's failure to act, Esparraguera was denied her statutory and

constitutional rights to due process.

243.     Because of the MSPB's failure to act, Esparraguera was deprived property without due process.

## **PRAYER FOR RELIEF**

Wherefore, Maria Esparraguera, by and through counsel, requests that the Court enter judgment in her favor and award her the following relief:

1. Declare Esparraguera's removal from the SES was unlawful and unconstitutional.

2. Declare Defendants' conduct removing Esparraguera from the SES was unlawful and unconstitutional.

3. Cancel and expunge from Esparraguera's official personnel file her removal from the SES.

4. Retroactively reinstate Esparraguera to her previous SES appointment and position.

5. Award Esparraguera all back pay and benefits owed as a result of her retroactive reinstatement to the SES and cancellation of her removal from the SES.

6. Remove the Standard Form (SF) 50 and all other documents memorializing her unlawful and unconstitutional removal from the SES from Esparraguera's personnel file.

7. Enjoin the Department, Secretary and Under Secretary from depriving Esparraguera of her property right in continued SES employment without statutory and constitutional due process.

8. Hold unlawful and set aside the MSPB's failure to act and failure to issue an order with a final disposition.

9. Compel the MSPB to take final agency action and issue an order with a final disposition.

10. Award Esparraguera her costs and attorney's fees.

11. Grant other such relief as this Court deems just and proper.

Date:   February 17, 2021

Respectfully submitted,

Christopher J. Keeven #993971
Debra L. Roth #422452
Conor D. Dirks #1022481
Shaw Bransford & Roth P.C.
1100 Connecticut Ave NW, Suite 900
Washington, DC 20036
Tel: 202-463-8400
Fax: 202-833-8082

*Counsel for Plaintiff Maria Esparraguera*